# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KYLER MOJE, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. 15-CV-8929 |
| v. | )<br>) Judge Joan B. Gottschall |
| FEDERAL HOCKEY LEAGUE LLC,<br>NATIONAL CASUALTY COMPANY,<br>THE DAVID AGENCY INSURANCE<br>INC., and DON KIRNAN, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

The Illinois Insurance Placement Liability Act ("the Act") requires "[a]n insurance producer, registered firm, and limited insurance representative [to] exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 Ill. Comp. Stat. 5/2-2201(a) (West 2017). The motion to reconsider before the court presents questions about an insurance producer's duties to parties other than the insured.

The plaintiff, Kyler Moje, played professional hockey in the minor league for the Danville Dashers. During a game on February 10, 2012, a player for the opposing team allegedly hit him in the face with a hockey stick. He suffered serious injuries and lost the sight in one of his eyes.

Moje sued in this court (but not in this case) and obtained an $800,000 default judgment against the Federal Hockey League ("the League"). *See Moje v. Fed. Hockey League, LLC*, 792 F.3d 756, 758–59 (7th Cir. 2015) (affirming denial of motion to vacate default judgment). He

also sued the manufacturer of the visor he was wearing, but Moje's second amended complaint ("SAC") does not say what became of that claim. *See* SAC ¶¶ 19–27.

After obtaining the default judgment, Moje brought this action seeking declaratory relief regarding an insurance policy issued in June 2012 by defendant National Casualty Co. ("National Casualty"). *See* Policy, SAC Ex. 1. The policy identifies defendant the David Agency as the policy's producer, National Casualty as the insurer, and the League and its commissioner, defendant Dan Kirnan as the insureds. *Moje v. Federal Hockey League LLC*, 207 F. Supp. 3d 833, 836 (N.D. Ill. 2016), Slip Op. at 6, ECF No. 55.

In count two, Moje seeks a declaratory judgment against the David Agency. He alleges that the League communicated to the David Agency the type of insurance it needed to insure against the type of loss he sustained, that the David Agency knew what type of policy the League wanted, and that the League "was under the impression that the policy at issue covered personal injury losses, such as that sustained by Plaintiff." SAC ¶¶ 38–41 (quotation in ¶ 41). Moje has since made clear his theory is that the David Agency negligently failed to procure the insurance the League wanted. *See* Slip Op. at 8. Whether the policy covers Moje's claim has yet to be determined.

The David Agency moved to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The court granted its motion in part and denied it in part in a memorandum opinion and order entered September 19, 2016 ("the September 2016 opinion"). *See* Slip Op. at 1, 11. The David Agency asks the court to reconsider the denial of its request to dismiss count two.

**Reconsideration Standard**

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI*

*Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). The losing party's disappointment with the outcome does not demonstrate manifest error. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). But new cases (especially binding ones) can warrant reconsideration if they would manifestly produce a different outcome. *See U.S. Fid. & Guar. Co. v. John Buck Co.*, No. 00 C 2460, 2001 WL 1298708, at *2 (N.D. Ill. Oct. 24, 2001) (considering whether newly decided case warranted reconsideration of decision on in insurance coverage); *Great W. Cas. Co. v. Marathon Oil Co.*, No. 99 C 3101, 2001 WL 699957, at *2 (N.D. Ill. June 21, 2001) (considering motion to reconsider based on new case law but denying motion because "the new cases would not compel a different result[; . . . ] none of the cases are controlling authority for this court").

**The *M.G. Skinner* Decision**

After the September 2016 opinion, the Seventh Circuit applied the Act to reject a claim that an insurance broker owed parties other than the insured or proposed insured a duty of ordinary care in *M.G. Skinner & Associates Insurance Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 318–20 (7th Cir. 2017). A group of owners and managers of commercial property formed a company, called WCPP for brevity's sake here, to purchase insurance for their properties; the total insured value exceeded $3.5 million. *Id.* at 315. WCCP hired an insurance broker to purchase renewal coverage in 2001. *Id.* The broker hired a sub-broker, and the sub-broker hired a sub-sub-broker. *See id.* at 315–16 (stating that use of sub-brokers is common with a placement of this size). The insurance ultimately purchased proved not to exist, and Michael A. Ward, the person who issued the policy, received a ten-year prison sentence for wire fraud. *Id.* at 316. The third party, a company referred to here as Norman-Spencer, became involved in the transaction when the brokers decided to split one of the property groups from the rest;

3

Norman-Spencer separately underwrote insurance for the split-off group. *See id* at 316. Norman-Spencer "pushed to be involved in more business," but Ward didn't allow it to participate in the WCPP deal. *See id.* As a result of the transaction, Norman-Spencer became aware of facts about Ward and his company which WCPP and its agents later alleged should have been "red flags." *Id.* WCPP, the insured, brought, among other things, a negligence claim against Norman-Spencer on the theory that Norman-Spencer owed it a duty to warn it of the red-flag facts about Ward. *See id.* at 318.

The Seventh Circuit upheld the entry of summary judgment for Norman-Spencer. It first considered whether Norman-Spencer could be directly liable to WCPP under § 2-2201(a). *See id.* at 318–19. "[T]here was no evidence that any broker in the procurement chain ever requested that Norman–Spencer serve as a sub-broker to procure insurance for WCPP," so WCPP could not prevail on its claim under the Act. *Id.* at 319.

### Statutory Analysis

*M.G. Skinner*'s statutory analysis illuminates an additional reason the SAC should not be dismissed. Players of professional sports often buy personal injury insurance for themselves; leagues buy commercial general liability coverage.[1] Walter Champion, Fundamentals of Sports Law, Contracts § 16:6 (West 2016). This practice does not appear to be entirely uniform, however. Champion, *supra*, notes a 2005 case, for instance, in which the Houston Astros bought an insurance policy for a pitcher, albeit one insuring the salary it paid him if he became disabled. *See id.* (citing and discussing *Hous. McLane Co., Inc. v. Conn. Gen. Life Ins. Co.*, No. Civ.A. H-

---

[1] As stated in the cited hornbook:
> Many athletes, both professional and amateur, take out insurance policies against the possibility of injury. In addition, many teams, arenas, leagues, universities, school districts, etc., take out liability insurance so they can be paid by the insurer for loss that results from legal liability to a third person. It protects the insured against financial loss brought upon by lawsuits based on negligence. Common subjects for liability insurance are risks from use of the premises, from faulty products, from use of vehicles, and from the practice of professions. *Id.* (internal quotations and citations omitted).

06-1508, 2006 WL 3050812 (S.D. Tex. Oct. 24, 2006)). Moje played minor league hockey. As recently as 2009, the National Hockey League ("NHL") purchased insurance policies covering its players, but that trend does not appear to be universal in the world of hockey. *Compare* Champion, § 16:6 (citing Jeff Klein, *In Olympic Camps, It's Skate at Your Own Risk*, N.Y. Times, Aug. 6, 2009, at B14), *with Elbing v. Blair*, No. 2005AP1653, 2007 WL 1322101, at *1 (Wis. Ct. App. May 8, 2007) (hockey player hurt in fight sued the other player and player's insurer rather than opposing team, the league, or their insurers). Read against this background, the SAC's allegations sweep broadly enough to claim that the League intended to procure a policy like that the NHL bought for its players naming Moje as an additional insured. *See* SAC ¶¶ 38–41. So the SAC plausibly alleges that Moje was "a proposed insured" under § 2-2201 to whom the David Agency owed a duty of reasonable care. *See Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 757–58, 770 (Ill. 2015) (holding insurance broker owed duty to insured and proposed insured where insured asked insurance producer to add his fiancée as an additional insured).

**General Negligence Principles**

The Seventh Circuit also rejected WCPP's alternative argument that Norman-Spencer owed it a duty of care under "more general 'common law negligence principles.'" 845 F.3d at 320–21. This court must follow the Seventh Circuit's interpretation of Illinois law unless and until subsequent Illinois cases supplant it. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (Seventh Circuit's decision interpreting state law must be followed unless "[a] decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law"); *Gschwendtner v. John Hancock Mut. Life Ins. Co.*, No. 90 C 2589, 1990 WL 186572, at *2 (N.D. Ill. Nov. 16, 1990) ("[T]his court is bound to follow [Seventh Circuit

5

decisions] on state law issues absent subsequent state cases undermining Seventh Circuit precedent . . . .").

But nothing in *M.G. Skinner*'s analysis demonstrates that this court manifestly erred when it applied general negligence principles. This court relied on the same "duty of ordinary care" language in *Skaperdas* quoted by the *M.G. Skinner* court. Slip Op. at 9. True, the *M.G. Skinner* court stated in general terms the plaintiff's' argument under *Skaperdas*'s "duty of ordinary care" language this way: "After the enactment of § 2-2201, Illinois courts considering negligence claims against insurance brokers have been reluctant to expand the duties of brokers and agents beyond those articulated in the statute. Generally, a duty to the insured arises only after specific coverage is requested, and *courts have not considered negligence claims grounded in more general negligence principles outside the scope of § 2-2201(a)'s language*." *M.G. Skinner*, 845 F.3d at 320 (emphasis added) (citing *Skaperdas*, 28 N.E.3d at 756) (other citations omitted). As the qualifier "[g]enerally" suggests, *M.G. Skinner* also specifically acknowledged Illinois cases hold that insurance producers owe a duty of care to people other than the insured or proposed insured in auto-insurance cases, e.g., *Gothberg v. Nemerovski,* 208 N.E.2d 12 (Ill. App. Ct. 1965), or in certain circumstances when obtaining life insurance (and this list is not meant to be exhaustive). The *M.G. Skinner* court reinforced the point by citing a pair of life insurance cases holding that "[i]f an insurance agent acts so as to induce detrimental reliance by the proposed insured, the agent thereby undertakes an individual duty not to betray that reliance by his subsequent acts." *Bovan v. Am. Family Life Ins. Co.*, 897 N.E.2d 288, 294 (Ill. App. Ct. 2008) (quoted in *M.G. Skinner*, 845 F.3d at 319).

*M.G. Skinner* does no more than read Illinois cases decided after the Act as sounding a note of caution when expanding liability beyond § 2–2201(a)'s ambit under common law

negligence principles.  *See* 845 F.3d at 319 (citations omitted).  *M.G. Skinner*'s general note of caution does not demonstrate manifest error, especially given its acknowledgement of voluntary-undertaking cases.  Even if it did, the SAC states a claim under § 2-2201 for the reasons already explained.

\* \* \*

For these the foregoing reasons, the David Agency's motion for reconsideration, ECF No. 57, is denied.  A status conference is set for September 22, 2017, at 9:30 a.m.

Date:   September 12, 2017                         /s/
                                                              Joan B. Gottschall
                                                              United States District Judge