**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Kyler Moje, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15-CV-8929 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| Federal Hockey League, LLC, National | ) | |
| Casualty Company, The David Agency | ) | |
| Insurance, Inc., and Don Kirnan, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

The plaintiff, Kyler Moje ("Moje"), played professional, minor-league hockey for the
Danville Dashers, a team in the now-defunct[1] Federal Hockey League ("the League"). Pl.'s
Resp. to Def. National Casualty's SUMF ¶ 11. During a game on or about February 10, 2012, a
player for the opposing team, the Akwesasne Warriors, allegedly struck Moje in the face with a
hockey stick, thrusting the blade under Moje's helmet. *Id.* ¶ 12.

The pending motions for summary judgment in this diversity case raise choice of law
questions and questions of substantive insurance law. For the following reasons, National
Casualty Company's ("National Casualty") motion for summary judgment is granted, and The
David Agency Insurance, Inc.'s ("The David Agency") motion for summary judgment is
granted.

---

[1] The record shows that the League dissolved on February 8, 2016. Pl. Ex. A 2, ECF No. 91-1.

# I. Background

Except where otherwise noted, the following facts are undisputed. On the night of his injury, Moje was taken to the hospital after medical personnel assessed his injury. Pl.'s Resp. to Def. National Casualty Statement of Undisputed Material Facts ("SUMF") ¶¶ 14–15, ECF No. 95. His injuries resulted in his being placed on the League's 30-day injured reserve ("IR") list. *Id*. ¶17. Fewer than six players were placed on that list each year. *Id*. ¶19.

## A. Overview of Claims and Motions

Moje filed a separate lawsuit in this court against the League and the manufacturer of the helmet he was wearing. As detailed below, he obtained a default judgment against the League on June 11, 2014, in the amount of $800,000. *Moje v. Fed. Hockey League, LLC* [*Moje I*], 792 F.3d 756, 758 (7th Cir. 2015). The League moved to set aside the default judgment in October 2014, but the motion was denied. *Id.* The League appealed, and the Seventh Circuit affirmed. *Id.* at 758–59.

Moje brought this action seeking declaratory relief that an insurance policy issued in June 2012 by defendant National Casualty Co. covers his injury. *See* Ans. to 2nd Am. Compl. Ex. A ("Policy"), ECF No. 13-1. The policy identifies defendant The David Agency Insurance, Inc. as the policy's producer, National Casualty as the insurer, and the Federal Hockey League ("the League") and its commissioner, defendant Dan Kirnan ("Kirnan"), as the insureds. *Moje v. Fed. Hockey League LLC* [*Moje II*], 207 F. Supp. 3d 833, 836 (N.D. Ill. 2016).

In count two of his Second Amended Complaint ("SAC"), Moje seeks a declaratory judgment against The David Agency. He alleges that the League communicated to The David Agency the type of insurance it needed to insure against the injury he sustained, that The David Agency knew what type of policy the League wanted, and that the League "was under the

impression that the policy at issue covered personal injury losses, such as that sustained by plaintiff." SAC ¶¶ 38–41 (quotation in ¶ 41). Moje has since made clear his theory: that The David Agency negligently failed to procure the insurance the League wanted. *See* Slip Op. at 8. This court has not decided whether the policy covers Moje's claim.

Separate motions for summary judgment filed by National Casualty and The David Agency are before the court. National Casualty contends that Kirnan and the League failed to comply with the policy's notice provisions. The David Agency argues that Moje cannot come forward with sufficient evidence to require a trial on his claim that The David Agency negligently procured the policy.

### B. Procurement of the Policy

The David Agency is an Illinois insurance producer with a principal place of business in Elmhurst. Pl.'s Resp. to The David Agency SUMF ¶ 1, ECF No. 98. Jo Ellen Weldon, a David Agency employee, produced the policy at issue here. *Id*. ¶ 7, 8. Someone other than Kirnan associated with the League may have initially contacted The David Agency about procuring insurance. *Id*. ¶ 13. Following the initial contact, Weldon communicated beginning in October 2011 with Kirnan by phone and email about procuring insurance; Kirnan served as the "primary contact" for the League. *Id*. ¶¶ 9–10, 13.

Kirnan and Weldon had "several conversations" before the policy was issued. Pl.'s Resp. to The David Agency SUMF ¶ 14. The two discussed the possibility of obtaining coverage for certain teams in addition to the League itself, but Weldon told Kirnan that The David Agency could not procure that kind of coverage. *Id*. ¶ 20. Regarding the League, Kirnan told Weldon "that he wanted to purchase general liability insurance." *Id*. ¶¶ 17, 18 (testimony that Kirnan was "just looking for a general liability policy" (quoting Weldon Dep. 18:18-19:4, The David

3

Agency SUMF Ex. C, ECF No. 91; Kirnan Dep. 125:24-126:2, National Casualty Mem. Supp. Mot. Summ. J. Tab D, ECF No. 94-1).

Weldon sent Kirnan a quote for general liability coverage; the quote outlined the policy's coverage and limits. Pl.'s Resp. to The David Agency SUMF ¶¶ 21, 22; Def. The David Agency Resp. to Pl.'s SUMF ¶ 3, ECF No. 105 (quotation therein). Kirnan accepted the quote. Pl.'s Resp. to The David Agency SUMF ¶ 22. At some point Weldon told Kirnan that "the policy contained "an extra coverage for liability, tort liability." Def. The David Agency Resp. to Pl.'s SUMF ¶ 4 (quoting Weldon Dep. 15:8–12). She did not tell Kirnan that claims made by players against the League would be excluded. *Id*. ¶ 5. Nor did Weldon advise Kirnan that he had to give prompt notice of a claim or lawsuit. *Id*. ¶ 13.

Kirnan did not know what a "general liability" policy would cover and relied on The David Agency to procure a policy. *Id*. ¶¶ 11, 12. He "is the only person with knowledge of any requests from the FHL to The David Agency to procure insurance coverage for the FHL," and he is the "only person with knowledge of any communications between the FHL and The David Agency relating to the procurement of insurance coverage for the FHL." Pl.'s Resp. to The David Agency SUMF ¶¶ 15, 16 (undisputed); accord *id*. ¶ 57.

Weldon sent Kirnan a copy of the policy on November 2, 2011. *Id*. ¶ 24. The second paragraph of her transmittal letter reads as follows:

> I have reviewed your policy but ask that you please take time to examine it carefully to make sure the limits of coverage meet your needs and that no items have been omitted. If there are any portions of the policy that you do not understand, please feel free to call me for an explanation.

*Id*. (quoting National Casualty Mem. Supp. Mot. for Summ. J. Tab H, ECF No. 94-1). Kirnan read and understood the letter when he received it on or around the same day. Pl.'s Resp. to The David Agency SUMF ¶ 25 (citing Kirnan Dep. 113:22–114:8). Kirnan testified that he was "not

aware of any errors with respect to the Policy." *Id.* ¶ 26. "Kirnan does not have any criticisms of The David Agency's conduct in connection with the procurement of the Policy and has no complaints about the Policy that was provided by The David Agency." *Id.* ¶ 30.

## C. The Policy

The policy contains language that National Casualty argues precludes coverage for any claims based on Moje's injury. *See* Def. The David Agency Resp. to Pl.'s SUMF ¶ 15. "The first exclusion to which National Casualty points precludes coverage for 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Def. The David Agency Resp. to Pl.'s SUMF ¶ 7 (quoting Policy pp. 16–17.)

An endorsement to the policy states that National Casualty "will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' to any 'participant' to which this insurance applies." Pl.'s Resp. to The David Agency SUMF ¶ 28. The term "participant" is defined as 'players, coaches, managers, staff members, team workers, officials, media personnel, Very Important Persons and other personnel who have been granted proper authorization to enter any restricted area.'" Policy 40; Def. The David Agency Resp. to Pl.'s SUMF ¶ 9. The endorsement itself contains an exclusion, however, excepting from coverage "Bodily Injury" to a "Participant." Policy 39; Def. The David Agency Resp. to Pl.'s SUMF ¶ 8.

The endorsement also incorporated the following provisions found in Section IV of the Policy, entitled "Commercial General Liability Conditions:"

## 2. Duties In The Event of Occurrence, Offense, Claim or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and address of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demanded, notices, summonses, or legal papers.

Policy p. 25; Pl.'s Resp. to The David Agency SUMF ¶ 27.

### D. Moje's Suit Against the League

Kirnan had no insurance training, and prior to the Moje matter, he had never filed an insurance claim on the League's behalf. Def. National Casualty's Resp. to Pl.'s SUMF ¶¶ 1, 2, ECF No. 109. Kirnan "Never read the Commercial General Liability policy from National Casualty and at the time of the Underlying Lawsuit he did not understand that insurance carriers had to be promptly notified by the FHL." *Id*. ¶ 16; *see also id.* ¶ 17 (Kirnan was not advised by The David Agency of need to advise insurer of suits).

Whether, and if so when, notice of Moje's injuries reached Kirnan before February 2014 (the day he was served with the lawsuit) is disputed.[2] *See* Pl.'s Resp. to Def. National Casualty's SUMF ¶¶ 20–21, ECF No. 95; Def. National Casualty's Resp. to Pl.'s SUMF ¶ 4. The Dasher's

---

[2]The David Agency's Local Rule 56.1(a)(3) statement of undisputed facts sets forth many of the same undisputed facts regarding Moje's injury and suit against the League. *See* Def. The David Agency's Resp. to Pl.'s SUMF ¶¶ 32–51 (all facts undisputed). The court cites only one fact statement for duplicate factual propositions.

owner, Barry Soskin, directed an assistant to notify the appropriate insurance company, but the parties cite no evidence that this was done. *See* Pl.'s Resp. to Def. National Casualty's SUMF ¶ 16; Def. National Casualty's Resp. to Pl.'s SUMF ¶ 24 (undisputed fact that Soskin had "no direct conversations" with National Casualty). Quite the contrary. Kirnan's testimony that he had no conversations with Soskin about procuring insurance stands undisputed. *Id*. ¶ 23.

Eugene Binda ("Binda"), the League's supervisor of referees, testified that he recalled receiving a written report of Moje's injury and that he "would have" forwarded that report to Kirnan by email. *See* Binda Dep. 21:5-9 23:1–10, Tab E, ECF No. 94-1. Yet no email messages appear in the record, and Kirnan testified that Binda "never did" bring Moje's injury to his attention. Kirnan Dep. 39:6–16.

Kirnan was served with the summons and the complaint against the League on February 6, 2014. Pl.'s Resp. to Def. National Casualty's SUMF ¶ 23. Moje also sued Oakley, Inc. ("Oakley"), the maker of the visor Moje was wearing when he was injured. *Moje v. Fed. Hockey League, LLC* [*Moje I*], 792 F.3d 756, 758 (7th Cir. 2015).

When he was served, Kirnan "believed the policy would provide coverage" for the lawsuit, Pl.'s Resp. to Def. National Casualty's SUMF ¶ 24, but he believed that "it was not worth contacting" National Casualty about the suit, *id.* ¶ 25. It was Kirnan's policy to file insurance claims when he considered the claim to involve "substantial losses." Pl.'s Resp. to Def. National Casualty's SUMF ¶ 28 (citation omitted; undisputed fact).

Instead of contacting his insurer, on or about February 6, 2014, Kirnan hired John A. LoFaro ("LoFaro"), a New York solo practitioner, to defend the suit. *Id.* ¶ 30. Although LoFaro prepared a "general denial," he never filed it, and he never filed a notice of appearance for the League. *Id.* ¶ 31; *see also* Def. National Casualty's Resp. to Pl.'s SUMF ¶¶ 10, 13–15

(describing LoFaro's testimony regarding his belief that the suit was not meritorious); *Moje I*, 792 F.3d at 757.  A 2015 Seventh Circuit opinion states that about a month after the suit was filed, Oakley's president called Kirnan to ask him why he had not answered the complaint.  *Id*.  Moje testified that he never "had any conversations" with LoFaro regarding insurance coverage of the underlying lawsuit."  Def. National Casualty's Resp. to Pl.'s SUMF ¶9.  LoFaro, on the other hand, testified that he and Kirnan had "two or three" such conversations, and Kirnan told LoFaro that he thought National Casualty would "drop him" if he reported the suit.  Def. National Casualty's Resp. to Pl.'s SUMF ¶¶ 11–12.  As with all material factual disputes, Moje's testimony of course prevails at summary judgment.

Moje moved for entry of default against the League on May 5, 2014.  Pl.'s Resp. to Def. National Casualty's SUMF ¶ 32.  The district court entered a default against the League on May 14, 2014.  *Id.* ¶ 33.  On June 11, 2014, that court held a hearing at which Moje proved up his damages, and the court entered a default judgment against the League.  *Id*.  The David Agency "immediately notified" National Casualty of the default judgment.  *Id.* ¶ 36.

Kirnan first learned of the default judgment some four months later, on October 9, 2014.  Def. National Casualty's Resp. to Pl.'s SUMF ¶ 5; *see also id.* ¶ 8 (Kirnan spoke to The David Agency about the default judgment "around the same time").  Kirnan notified National Casualty the same day.  Pl.'s Resp. to Def. National Casualty's SUMF ¶ 22.  Reserving its rights, National Casualty hired a lawyer who filed a motion to set aside the default on December 15, 2014.  *Id*. ¶¶ 37–38.  The motion was denied.  On appeal, the Seventh Circuit "assume[d] that LoFaro promised to represent the League yet abandoned his client." *Moje I*, 792 F.3d at 758.  Even under that assumption, the Seventh Circuit held that the League had not demonstrated that its default resulted from excusable neglect for two main reasons.  *Id.* at 758–59.  "[F]irst, the League failed

to tender the defense of Moje's suit to its insurer when it received the complaint; second, the League failed to act prudently after being alerted by Oakley that there was a problem." *Id.* at 759.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment "facts must be viewed in the light most favorable to," and all reasonable inferences from that evidence must be drawn in favor of, "the nonmoving party[–but] only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (e.g., produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury

could properly proceed to find a verdict in her favor") (citations and quotations omitted).

Summary judgment is warranted when the nonmoving party cannot establish an essential

element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679

F.3d 957, 964 (7th Cir. 2012).

### III. National Casualty's Motion For Summary Judgment

National Casualty contends no reasonable jury could find that the League complied with

the provisions of the policy requiring the League to notify National Casualty of an occurrence,

notify it of a claim, and send it copies of "summonses . . . or legal papers." Pl.'s Resp. to Def.

National Casualty's SUMF ¶¶ 8–10. In their briefing, the parties raise a choice of law problem,

but National Casualty effectively abandons its contention that New York law applies in its reply.

#### A. Choice of Law

A court exercising diversity jurisdiction under 28 U.S.C. § 1332 (applies the choice of

law rules of the state where it sits, Illinois in this case. *W. Side Salvage, Inc. v. RSUI Indem. Co.*,

878 F.3d 219, 223 (7th Cir. 2017) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

(1941)). Moje and National Casualty part company over how Illinois choice of law principles

should be applied. Moje argues that Illinois law governs while National Casualty champions

New York law.

Before performing a choice of law analysis, the court must be sure that there is a conflict.

"The party who seeks a choice-of-law determination must establish the existence of an outcome-

determinative conflict." *Id.* (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas.

Co.*, 10 N.E.3d 902, 905 (Ill. 2014)). National Casualty argues that the laws of Illinois and New

York conflict on the question of whether an insurer must prove prejudice to deny coverage for an

insured's failure to comply with Kirnan's policy's notice requirement. Def. National Casualty's

Mem. Supp. Mot. Summ. J. 5.  The cases National Casualty cites[3] indeed conflict; New York law requires the insurer to prove prejudice; Illinois law considers prejudice as a factor in deciding whether reasonable notice was given.  *Compare Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F. Supp. 3d 44, 55 (S.D.N.Y. 2015) (citing *N.Y. Ins. Law* § 3420(a)(5)), with *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 346 (Ill. 2006) ("hold[ing] that the presence or absence of prejudice to the insurer is one factor to consider when determining whether a policyholder has fulfilled any policy condition requiring reasonable notice"); *Simmon v. Iowa Mut. Cas. Co.*, 3 Ill.2d 318, 321–23 (1954); *State Auto Prop. and Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357–58 (7th Cir. 2017).  In its reply, National Casualty urges the court to disregard what it calls Moje's false conflict between the laws of Illinois and New York . . . [and his] suggest[ion that] application of Illinois law would create a different outcome than application of New York law to this late notice question."  Def. National Casualty's Reply 2–3, ECF No. 110.  As National Casualty offers no further analysis of how the conflict would change the result, *see id.*, it has not carried its burden to show that the conflict is outcome-determinative.  The court therefore applies Illinois law to the reasonable notice dispute between Moje and National Casualty.  *See W. Side Salvage*, 878 F.3d at 224 ("If the party fails to establish the existence of such a conflict, the court applies the law of the forum state.") (citing *Bridgeview Healthcare Ctr.*, 10 N.E.3d at 905).

<hr />

[3] National Casualty cites *Mimmitt v. Allstate Cty. Mut. Ins. Co.*, 928 So. 2d 203, 206 (Miss. Ct. App. 2006) for its construction of Mississippi law.  Neither Moje nor National Casualty argue that Mississippi law governs their dispute, so the court need not, and does not, determine the content of Mississippi law.

**B. Reasonableness of Notice**

In *West American Insurance Co. v. Yorkville National Bank*, 939 N.E.2d 288, 293–94 (Ill. 2010), the Illinois Supreme Court identified five factors to be considered when assessing the reasonableness of notice under an insurance policy. The factors are: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *Brumit Servs.*, 877 F.3d at 358 (quoting *Yorkville*, 939 N.E.2d at 293–94). These factors and the circumstances must be assessed in their totality; no one factor trumps any other. *Id.* (citing *Livorsi Marine*, 856 N.E.2d at 346); *see also Berglind v. Paintball Bus. Ass'n*, 930 N.E.2d 1036, 1044 (Ill. App. Ct. 1st Dist. 2010). Because National Casualty is moving for summary judgment, the court asks whether the evidence viewed in the light most favorable to Moje would permit a reasonable jury to find that he gave reasonable notice. *See Anderson*, 477 U.S. at 248. Three notice clauses are at issue here. "Illinois courts have generally applied [the reasonable notice] analysis regardless of the type of notice that is at issue." *See Livorsi Marine*, 856 N.E.2d at 344–45 (reversing decision that distinguished between notice of a lawsuit and notice of an occurrence).

*1. The Specific Language of the Policy's Notice Provision*

The plain language of the notice clauses in the policy favors National Casualty. Moje focuses on the language of two of the three notice requirements at issue. *See* Mem. Opp'n National Casualty's Mot. Summ. J. 7–8, ECF No. 96. The "as soon as practicable language" appears in the first and second notice clauses requiring the insured to give notice "of an 'occurrence' or an offense which may result in a claim" (first clause) and to give notice "[i]f a

claim is made or 'suit' is brought against any insured." Pl.'s Resp. to Def. National Casualty's SUMF ¶¶ 8, 9.

As Moje observes, the Illinois Supreme Court has asked whether notice was given within a reasonable time" when interpreting insurance policies requiring notice "as soon as practicable." *Berglind*, 930 N.E.2d at 1044 (citing *Livorsi Marine*, 856 N.E.2d at 338). As the citation to *Livorsi* makes clear, however, the phrase "reasonable time" used here refers to the five *Yorkville* factors. *See id.* The language of the policy at issue here therefore requires the court to analyze the *Yorkville* factors.

More significantly is the presence in all three clauses of mandatory language to describe the insured's duty to notify. *See* Pl.'s Resp. to Def. National Casualty's SUMF ¶¶ 8–10. As the Seventh Circuit has recently emphasized, the use of mandatory language does not allow the insured to pick and choose as between minor and major occurrences the insurer might not want to know about. *See Brumit Servs.*, 877 F.3d at 358 (citing *Am. Standards Ins. Co. of Wisc. v. Slifer*, 919 N.E.2d 372, 377 (Ill. App. Ct. 4th Dist. 2009)). Thus, Kirnan's "policy of making claims to insurance companies for only what he perceived to be substantial losses," Pl.'s Resp. to Def. National Casualty's SUMF ¶ 28, conflicts with the policy's plain, mandatory language.

This brings the court to the different language in the third notice clause. In contrast with the "as soon as practicable" clauses, the third notice provision says that the insured must "[i]mmediately send [National Casualty] copies of any demands, notices, summonses or legal papers." *Id*. 10. Moje does not grapple with this linguistic difference at all in his response. *See* Mem. Opp'n National Casualty's Mot. Summ. J. 7–8. When a contract uses different words in similar provisions, courts presume they mean different things. *See Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 1992 WL 318616, at *3 (N.D. Ill. Oct. 30, 1992) (contrasting "as soon as

13

practicable" clauses notice and "immediate" notice clauses and enforcing the latter "strictly").

Courts have characterized policy language requiring the insured to give notice "immediately" as

requiring notice "expeditiously," *Maneikis v. St. Paul Ins. Co. of Ill.*, 1980 WL 343874, at *3

(N.D. Ill. May 23, 1980), and as mandating notice to an insurer of a complaint and summons "at

the time the lawsuit was filed," *Hartford Accident & Indem. Co. v. Rush-Presbyterian-St. Luke's

Med. Ctr.*, 595 N.E.2d 1311, 1316 (Ill. App. 1st Dist. 1992) (citing *Atlanta Int'l Ins. Co. v.

Yellow Cab Co.*, 1991 WL 4428 (N.D. Ill. Jan. 16, 1991).

The requirement of immediate notice of a summons and complaint furthers the clause's

purpose. Generally, "[t]he purpose of an insurance policy's notice provision is to ensure that the

insurer will be able to timely investigate and defend claims against its insured." *Berglind*, 930

N.E.2d at 1044 (citing *Zurich*, 816 N.E.2d at 801) (other citations omitted); *see also Barrington

Consol. High Sch.*, 319 N.E.2d at 27. Once legal process is received, a defendant only has so

much time (ordinarily 21 days) to answer, move to dismiss, or risk entry of a default and a

default judgment. *See* Fed. R. Civ. P. 12(a)(1)(A)(i); 55(a); 55(b). The facts of this case

illustrate the need for prompt action when a complaint and summons are received, and the court

need not belabor the point.

### 2. The Insured's Sophistication

National Casualty argues that the second factor is neutral because Kirnan owned several

other businesses and was "street smart," having made several other insurance claims. *See* Def.

National Casualty's Reply Supp. Mot. Summ. J. 10–11, ECF No. 110. The Local Rule 56.1 fact

statements cited by defendants do not support this proposition, particularly when viewed in the

light most favorable to Moje. *See id.* True, the undisputed fact that "Kirnan had a policy of

making claims to insurance companies for only what he perceived to be substantial losses" at

least suggests that Kirnan had made other claims, Pl.'s Resp. to Def. National Casualty's SUMF ¶ 28, but, with inferences favorable to Moje, it stops well short of establishing that Kirnan was experienced with "insurance and general commercial matters," Def. National Casualty's Reply Supp. Mot. Summ. J. 11.[4]

Nor does the fact that Kirnan hired LoFaro by itself establish Kirnan's sophistication. The Seventh Circuit found that Kirnan and the League's handling of this matter, including hiring LoFaro, defied good business judgment. *See Moje I*, 792 F.3d at 759 ("Instead of turning to its insurer, which any sensible business should have done, it hired LoFaro."). Multiple inferences can be drawn about Kirnan's savvy in insurance matters, including the inference favorable to Moje that Kirnan was in over his head.

A commercial general liability ("CGL") insurance policy lands on the more complex end of the spectrum of sophistication. *See Brumit Servs*, 877 F.3d at 359 (distinguishing *Berglind*, *supra*, because it involved a CGL policy). Undisputed evidence in the record here shows that Kirnan had no insurance training, and he had not read the policy or been told specifically about the notice requirement. Def. National Casualty's Resp. to Pl.'s SUMF ¶¶ 1, 16, 17. The court recognizes that if LoFaro's testimony that he and Kirnan had strategic conversations about insurance were believed, this factor could cut for National Casualty. *See id.* ¶¶ 10, 12, 13. Moreover, Kirnan's undisputed reason for not reading the policy–"laziness"–could reasonably be viewed unfavorably to him as burying his head in the proverbial sand. Pl.'s Resp. to Def.

---

[4] The court disregards the parties' direct citations to evidentiary materials throughout their briefing, including National Casualty's direct citation to Kirnan's deposition on page 11 of its reply, ECF No. 110. *See Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664–65 (N.D. Ill. 2015) (collecting numerous standing for the proposition that Local Rule 56.1 prohibits parties from citing evidentiary materials in summary judgment briefing); *BA Jacobs Flight Servs., LLC v. Rutair Ltd.*, 2015 WL 360758, at *3 (N.D. Ill. Jan. 27, 2015) (collecting even more cases).

National Casualty's SUMF ¶ 26.  Nonetheless, these factual issues must be resolved for Moje at summary judgment; Kirnan must be considered unsophisticated at summary judgment.

### *3. The Insured's Awareness of An Event That May Trigger Insurance Coverage*

The third factor strongly favors National Casualty.  Resolving the disputed facts about when Kirnan learned of Moje's injury, Kirnan knew of the injury and the existence of the lawsuit when he was served with a complaint and summons on February 6, 2014.  Pl.'s Resp. to Def. National Casualty's SUMF ¶ 23; *see also AMCO*, 49 N.E.3d at 907.  He believed that the policy would cover the suit at the time.  *Id*. ¶ 24.  Yet he made a strategic decision to hire LoFaro, believing that notifying National Casualty was "not worth it."  *Id.* ¶ 25.  Moreover, according to the Seventh Circuit's opinion, Oakley's president telephoned Kirnan about a month after the suit was filed to ask him why an answer had not been filed.  *Moje I*, 792 F.3d at 757.

Moje argues that Kirnan reasonably relied on LoFaro and reported the default judgment to National Casualty promptly when Kirnan learned of it in October.[5]  *See* Mem. Opp'n National Casualty's Mot. Summ. J. 9–10.  But by then it was too late.  Notice clauses exist to provide the insurer, not the insured, with the upfront opportunity to assess these sorts of risks; "[a]n insured cannot simply roll the dice with the insurer's funds, hiding behind the statistical probabilities it has assigned to the case outcome."  *Brumit Servs.*, 877 F.3d at 361 (quoting *Kerr*, 670 N.E.2d at 768) (brackets in original); *accord ContextMedia*, 65 F. Supp. 3d at 581–82.  By his own testimony, that is what Kirnan did.  *See* Pl.'s Resp. to Def. National Casualty's SUMF ¶¶ 24–25.

### *4. The Insured's Diligence in Ascertaining Whether Policy Coverage is Available*

For essentially the same reasons, the fourth factor also favors National Casualty.  Again, Kirnan believed that coverage was available; he just decided not to use it.  Pl.'s Resp. to Def.

---

[5] Moje cites directly to deposition transcripts on pages 9–10 of his response brief.  This is insufficient, and the court disregards these citations, finding this to be an independently sufficient reason to reject Moje's arguments.

National Casualty's SUMF ¶¶ 24–25.  Moje argues that genuine factual disputes exist as to the fourth factor, pointing to the disputes over whether Kirnan had pre-suit notice of Moje's injuries and the dispute over whether Kirnan and LoFaro discussed insurance coverage.  *See* Resp. 10–11.  The court has already explained why the dispute over notice before Kirnan was served on February 6, 2014, is immaterial (because Kirnan's failure to give notice after that date was independently unreasonable).  Similarly, on Kirnan's version of events, which the court accepts at summary judgment, he had no discussions with LoFaro about insurance.  Kirnan's failure to raise the issue may indicate a lack of diligence.

Moje makes a final argument concerning two of National Casualty's counterclaims here. Mem. Opp'n 11–12.  According to Moje, National Casualty's counterclaim (for a declaration that the policy's scope of coverage did not reach Moje's injury) creates a fact issue on whether inspecting the policy would have alerted Kirnan that coverage existed.  *Id.*  While inventive, this argument cannot be squared with Kirnan's undisputed testimony that he never read the policy and that he subjectively believed coverage was available when he was served with the complaint and summons in February 2014.  Pl.'s Resp. to Def. National Casualty's SUMF ¶ 24; Def. National Casualty's Resp. to Pl.'s SUMF ¶ 16; *see also* Pl.'s Resp. to Def. National Casualty's SUMF ¶ 27 ("When Kirnan did finally read the Policy's notice conditions [at his deposition], he had no questions about their requirements.").

### 5. Prejudice to the Insurer

As Moje emphasizes, prejudice cannot be viewed in a vacuum.  *Brumit Servs.*, 877 F.3d at 357 (citing *Livorsi Marine*, 856 N.E.2d at 346).  Moje blames National Casualty, rather than Kirnan, for the denial of the League's motion to set aside the default judgment.  Moje lays emphasis on the Seventh Circuit's statement that the "thin record that the League built in the

district court does not compel a ruling in its favor." *Moje I*, 792 F.3d at 758. Moje points out that it was a lawyer hired by National Casualty who built that thin record, and not only was National Casualty prejudiced but the League was as well. Mem. Opp'n 12–13. The attorney should have investigated LoFaro's reasons for his conduct before moving to set aside the default and also advised the district court that the policy might not have allowed coverage, according to Moje. *See id.*

Moje cites no evidence, and the court can find none, in the Local Rule 56.1 fact statements, supporting his contentions that bringing either matter to the district court's attention would have produced a different outcome. *See id.* He offers no expert testimony, for instance. Neither does he cite a case in which default was set aside on similar facts. *See id.* Speculation about a material issue such as causation and prejudice, particularly speculation in a brief unsupported by evidence, cannot defeat summary judgment. *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir.1994) (citing *Wintz ex rel. Wintz v. Northrop Corp.*, 110 F.3d 508, 515 (7th Cir. 1997)).

Even if Moje's arguments were supported by evidence, the Seventh Circuit assumed that LoFaro abandoned the League and nonetheless affirmed the default judgment. *Moje I*, 792 F.3d at 758. The Seventh Circuit's assumption is more favorable to Moje and the League than the facts Moje now suggests should have been presented in the motion to set aside default judgment (i.e., that LoFaro "never believed he was hired to file an appearance" in this court). Mem. Opp'n 12. The Seventh Circuit found that the League's conduct was not excusable even if LoFaro abandoned it:

> Instead of turning to its insurer, which any sensible business should have done, it hired LoFaro. Why? The only reason the League has given is that he had provided satisfactory legal services to Kirnan (and perhaps the League) in earlier years. But what kind of legal services? LoFaro's web site describes his practice as "Personal

Injury Criminal Law DWI, Speeding, and all Traffic Related Matters". *See http://lofarolaw.com*. That list of specialties does not imply aptitude for the defense of a million-dollar tort suit in Chicago. LoFaro practices in Syracuse, New York, and is not admitted to the bar of the Northern District of Illinois. Even if he were a wizard of tort defense, why keep the insurer in the dark? The League has never offered a reason. After a co-defendant told the League that no answer had been filed on its behalf, it did not take precautions such as notifying the insurer, engaging counsel in Chicago, or checking the district court's docket (which can be done from any desktop computer). A check of the docket would have revealed that LoFaro did not file an appearance as the League's attorney and did nothing to protect its interests. Because LoFaro had not filed an appearance, Moje's lawyer would have sent all filings, such as the request for a default judgment and his proof of damages, directly to the League, which sat on its hands. The League cannot escape a substantial share of the responsibility for the outcome.

*Moje I*, 792 F.3d at 759. Thus, the Seventh Circuit concluded that the failure to notify National Casualty of the suit made the League culpable in the default. *See id.* The Seventh Circuit's conclusion flowed from the League's failure to respond to notices Moje's attorney must have sent to it, not just LoFaro's conduct. *See id.* So regardless of whether the policy covered the suit, the League's conduct would have been the same, at least as far as this record shows, and the default would have stood.

Ultimately, Moje's focus on a hypothetical motion to set aside the default glosses over the reality that, had it received prompt notice of the summons and complaint, National Casualty would have had the opportunity to prevent the entry of a default in the first place. The point of notice provisions–the benefit for which the insurer bargains–is to afford the insurer the "opportunity to do its own investigation" in a timely fashion. *Brumit Serv's*, 877 F.3d at 361 (citing *Barrington Consol. High Sch. v. Am. Ins. Co.*, 319 N.E.2d 25, 27 (Ill. 1974)). Because Kirnan and the League did not comply with the notice provision, "[W]e will never know. That is the problem." *Id.* (discussing prejudice).

*6. Totality of the Circumstances*

Considering the factors in their totality, summary judgment for National Casualty is appropriate. The only genuine, material dispute concerns Kirnan's level of sophistication. The reasonableness of notice is a question of law on undisputed material facts. *AMCO Ins. Co. v. Erie Ins. Exch.*, 49 N.E.3d 900, 907 (Ill. App. Ct. 1st. Dist. 2016) (citing *Kerr v. Ill. Cen. R.R. Co.*, 670 N.E.2d 759 (Ill. App. Ct. 1st Dist. 1996)); *Hartford Cas. Ins. Co. v. ContextMedia, Inc.*, 65 F. Supp. 3d 570, 579 (N.D. Ill. 2014) (citation omitted). Resolving the material disputes for Moje and assuming Kirnan was unsophisticated, the undisputed evidence nevertheless makes clear that Kirnan believed that coverage was available when he received the complaint and summons in February 2014, but he decided to hire LoFaro for reasons that were his own. In doing so, Kirnan, and the League, knowingly breached the policy's notice requirements and deprived National Casualty of the benefit of its bargain. *See id.* The League's "reasons for doubting [its] liability cannot excuse the failure to notify [the insurer] here." *Tribune Co. v. Allstate Ins. Co.*, 715 N.E.2d 263, 270 (Ill. App. Ct. 1st Dist. 1999). Accordingly, National Casualty's motion for summary judgment is granted.

## IV. THE DAVID AGENCY'S MOTION FOR SUMMARY JUDGMENT

Moje has made clear that his claim for declaratory relief in Count II of his second amended complaint[6] proceeds on the theory "that The David Agency negligently failed to procure the insurance the League wanted." *Moje v. Fed. Hockey League, LLC* [*Moje III*], 2017 WL 4005920, at *1 (Sept. 12, 2017). The Illinois Insurance Placement Liability Act requires

---

[6] In count two, Moje seeks a declaratory judgment against The David Agency. He alleges that the League communicated to The David Agency the type of insurance it needed to insure against the type of loss he sustained, that The David Agency knew what type of policy the League wanted, and that the League "was under the impression that the policy at issue covered personal injury losses, such as that sustained by Plaintiff." SAC ¶¶ 38–41 (quotation in ¶ 41).

"[a]n insurance producer, registered firm, and limited insurance representative [to] exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured."  735 Ill. Comp. Stat. § 5/2-2201(a) (West 2019).  To prevail on this claim, Moje must establish the familiar four elements of negligence: the existence of a duty owed by the defendant to the plaintiff, breach of that duty, causation, and damages.  *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 318–20 (7th Cir. 2017) (citing *AYH Holdings, Inc. v. Avreco, Inc.*, 826 N.E.2d 1111, 1131–32 (Ill. App. Ct. 1st Dist. 2005)).

Earlier in this case, The David Agency moved to dismiss Moje's complaint, arguing, *inter alia*, that it owed no duty to Moje.  *See Moje II,* 207 F. Supp. 3d at 839–40, *reconsideration denied Moje III*, 2017 WL 4005920, at *1.  This court held that on the facts alleged in the complaint the general rule that an insurance "producer's duty to supply adequate liability coverage to the insured tortfeasor extends to an injured plaintiff" applied to the facts Moje alleged in his complaint.  *Moje II*, 207 F. Supp. 3d at 839–40 (discussing, among other authorities, *Gothberg v. Nemerovski*, 208 N.E.2d 12, (Ill. App. Ct. 1st Dist. 1965)).  The court held that Moje's allegations that "the League requested from [T]he David Agency to be insured against the type of loss sustained by Moje stated a claim.  The League's request to be covered for the type of injury sustained by Moje may be specific enough to trigger [T]he David Agency's duty to exercise ordinary care and skill to obtain the coverage requested by the League."  *Id.* at 840.  The court added that "Moje will need to prove with more specificity whether such request was actually made, and whether it was sufficient to trigger [T]he David Agency's duty."  *Id.*

At summary judgment, The David Agency argues that Moje has not come forward with enough evidence for a reasonable jury to find that Kirnan made a specific enough request to

Weldon. "Under Section 2–2201(a), a duty to exercise ordinary care arises only after coverage is 'requested by the insured or proposed insured.'" *Norman-Spencer*, 845 F.3d at 318 (quoting *Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 756 (Ill. 2015)). Whether a request was made is a question of fact. *Id.* Moje and The David Agency disagree about what the summary judgment record shows Kirnan requested and whether his request was specific enough to trigger a duty of care. The court need not discuss those issues at length, however, because there is no genuine dispute over any fact material to causation.

As with any negligence claim, a plaintiff must prove that an insurance producer's breach of duty was the proximate cause of his or her damages. *E.g.*, *Ziemba v. Mierzwa*, 566 N.E.2d 1365 (Ill. 1991); *Garrick v. Mesirow Fin. Holdings, Inc.*, 994 N.E.2d 986, 993–94 (Ill. App. Ct. 1st Dist. 2013); *Pac. Tall Ships Co. v. Kuehne & Nagel, Inc.*, 76 F. Supp. 2d 886, 896 (N.D. Ill. 1999). Under Illinois law, "[a] proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause." *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 441 (7th Cir. 2009) (quoting *Crumpton v. Walgreen Co.*, 871 N.E.2d 905, 910 (Ill. App. Ct. 1st Dist. 2007)) (alteration in original); *see also Levy v. Minn. Life Ins. Co.*, 517 F.3d 519, 524 (7th Cir. 2008) (discussing Illinois Pattern Jury Instructions on proximate cause); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1127 (Ill. 2004) (describing the two components of proximate cause: "cause in fact" and "legal cause").

Two cases illustrate how Illinois courts apply proximate cause principles in disputes involving insurance producers. In *Pacific Tall Ships*, *supra*, the court entered summary judgment for the defendant on causation because the record showed that the insurance policy "it would have procured would not have covered this particular loss." 76 F. Supp. 2d at 896. The Illinois Appellate Court affirmed the dismissal of a married couple's claims against an insurance

producer in *Garrick* on causation grounds. The plaintiffs claimed that without their permission the broker removed a pair of expensive earrings from a list of covered property attached to an insurance policy issued in 2005. *Garrick*, 994 N.E.2d at 989. The plaintiffs subsequently renewed the insurance policy with the assistance of a different broker not named as a defendant. *Id.* at 987. Four years later, the couple filed a claim under a subsequent insurance policy for the loss of the earrings. *Id.* at 989. The insurer denied the claim because the earrings did not appear on a list of covered personal property attached to the 2009 policy. *Id.* Because the 2005 policy would not have covered the earrings' loss in 2009 (it was a one-year policy), any negligence of the broker who produced the 2005 policy could not, the court held, be the proximate cause of the denial of coverage under a different policy produced by a different broker. *See id.* at 993. (citing *Omni Overseas Freighting Co. v. Cardell Ins. Agency*, 397 N.E.2d 112 (Ill. App. Ct. 1st Dist. 1979)).

The David Agency argues that the League's failure to give reasonable notice of Moje's injury and suit to National Casualty is an independent cause of Moje and the League's injuries. Def. The David Agency's Mem. Supp. Mot. Summ. J. 9–11, ECF No. 89. Moje responds by focusing on the fact issues he alleges exist, including what type of insurance Kirnan requested, how Weldon responded, and whether the policy in fact covers the League's claims based on Moje's injuries. *See* Pl.'s Mem. Opp'n 8–11, ECF No. 99. Accusing The David Agency of putting the "proverbial cart before the horse," Moje responds that "[t]his issue as to whether or not the FHL's notice to National Casualty of the Underlying Lawsuit entitles National Casualty to summary judgment is being contemporaneously argued in Plaintiff s Response Memorandum to National Casualty's Motion for Summary Judgment." *Id.* at 11(first quote); *id.* at 8–9 (second quote). Moje then cites several Illinois cases, such as *Berglind*, *supra*, to summarize his

arguments that there are fact questions that are material to whether the League gave reasonable notice to National Casualty. *Id.* at 10–11.

Assuming for the sake of argument that they are genuine, the fact disputes Moje identifies are immaterial. The proverbial horse went before the cart in Part III where it was determined that the League did not comply with the policy's notice provisions and so breached the policy.

As between Moje and The David Agency, the following fact is undisputed: "unreasonably late notice of the Moje claim and Underlying Lawsuit and, in turn, material breach of the Policy's notice requirements, formed an independent basis for National Casualty's denial of coverage to the FHL and Moje." Pl.'s Resp. to The David Agency SUMF ¶ 50. Moje cannot maintain that Kirnan might have submitted a claim sooner if the policy included broader coverage language (and Moje does not so argue) because Kirnan believed that the policy afforded him coverage when he was served in February 2014 but chose not to submit a claim. *Id*. ¶ 41 (undisputed fact: "[w]hen he received Moje's lawsuit, Kirnan believed he had insurance for the lawsuit under the National Casualty CGL policy, but Kirnan made the conscious decision to contact Mr. LoFaro for representation instead of submitting the claim to his insurance company." (citation omitted). Consequently, even had The David Agency procured a policy with a broader scope of coverage, it "would not have covered this particular loss" due to Kirnan's failure to give reasonable notice. *Pac. Tall Ships*, 76 F. Supp. 2d at 895. So any fact disputes that might exist concerning whether the policy covers Moje or whether Kirnan requested broader coverage are immaterial. *See id.* at 895–96.

This case is like *Garrick*. In *Garrick*, the 2005 policy did not cover a loss in 2009, so the broker's alleged failure to expand the scope of the policy's coverage by listing earrings as covered property in 2005 did not proximately cause the plaintiff's injuries. *Garrick*, 994 N.E.2d

at 993. Similarly, the breach of the policy's notice requirements here gave National Casualty a reason, independent of the scope of coverage, to deny coverage, Pl.'s Resp. to The David Agency SUMF ¶ 50, so any breach of The David Agency's duty to procure a policy with a more expansive scope of coverage did not proximately cause Moje's injuries. The court accordingly enters summary judgment on causation for The David Agency.

## V. Conclusion

When something seems too good to be true, it sometimes is. "It is the policy of [the Seventh Circuit] to favor trials on the merits over default judgments." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1383 (7th Cir. 1995) (citing *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir.1984)). The preference for resolution on the merits serves the interests of plaintiffs and defendants alike, as the facts of this case illustrate. Kyler Moje probably would not be suing an insurance company and an insurance agency if he had a realistic hope of collecting his $800,000 default judgment from the now-defunct Federal Hockey League. We will never know whether Moje would have been successful if his claim against the League had been litigated on its merits or whether the League's insurance policy would have afforded coverage. We will never know because the League made the decision not to give reasonable notice to its insurer and instead hired a lawyer who never defended the suit and who was not licensed to practice before this court. That led to the entry of a default judgment that for Moje is probably the practical equivalent of losing on the merits.

For the reasons explained above, neither National Casualty nor The David Agency can be held liable to Moje in these circumstances. The motions for summary judgment are granted.


Dated: March 28, 2019                    _____/s/_____
                                         Joan B. Gottschall
                                         United States District Judge